## ST. AUGUSTINE CHURCH v METROPOLITAN BANK

Ohio Appeals, 3rd Dist, Auglaize Co

Decided December 30, 1936.

Boesel & Boesel, F. P. Connaughton, Wapakoneta, and Dempsey & Dempsey, Cincinnati, for plaintiffs in error.

Hughes & Hughes, Lima, for defendant in error.

## OPINION

By GUERNSEY, J.

This is an error proceeding under the former appellate practice, from the Common Pleas Court of Auglaize county, Ohio. The plaintiffs in error, the congregation of St. Augustine Roman Catholic Church, of Minster, Ohio, and John T. McNicholas, archbishop of Cincinnati, as trustee for the congregation of St. Augustine Roman Catholic Church, of Minster, Ohio, together with P. Sixtus Meyer, Henry Mehmert, Henry Schmitmeyer, Robert C. Schmeider, Lituristic Organs, Inc., and A. E. Frey, receiver of Lituristic Organs, Inc., were defendants, and the defendant in error The Metropolitan Bank of Lima, Ohio, was plaintiff in the lower court, and the parties to this error proceeding will, for convenience, be hereafter referred to in the relation they appeared in the lower court.

The plaintiff below filed its petition in the Common Pleas Court against the defendants, who are plaintiffs in error together with the other persons above named, alleging in substance:

That the defendant, P. Sixtus Meyer, was the pastor and agent of the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, with apparent authority to act and do the things hereinafter set forth; that the defendant, John T. McNicholas, an archbishop of the Roman Catholic Church of the diocese, including Cincinnati, Ohio, was, as such, the trustee for the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, and has custody, control and title to its property, and had full knowledge and acquiesced in the things and acts hereinafter set forth, or, by the exercise of ordinary care, should have had knowledge of all such acts and things; that the defendants, Henry Mehmert, Henry Schmitmeyer and Robert C. Schmeider, were trustees and advisors for and of the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, and had knowledge and acquiesced in all the acts and things hereinafter set forth; that the defendant Lituristic Organs, Inc., is an insolvent corporation, now in the hands of the defendant E. A. Frey heretofore appointed by a judge of the Common Pleas Court of Auglaize county for the purpose of winding up and liquidating said corporation, which said court has given this plaintiff leave to make said receiver and said defendant Lituristic Organs, Inc., parties hereto.

That during the month of April, 1931, the defendants, excepting said receiver, participated in all of the transactions, acts, matters, and things hereinafter set forth in regard to the installation of an organ in the church of the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, and the financing of the construction of the same; that said organ was built in said church by the defendant Lituristic Organs, Inc., to whom plaintiff furnished the necessary money for the purpose of building said organ; that said money

was advanced by plaintiff to said Lituristic Organs, Inc., solely upon the credit of collateral security that was offered and given plaintiff in the form of a promissory note signed by the defendant P. Sixtus Meyer, as pastor for the congregation of St. Augustine Roman Catholic Church; that on or about November 15, 1931, said note of said congregation, signed by said P. Sixtus Meyer for said congregation, in the sum of $6,265, due in six months after date, with seven per cent interest from date, and eight per cent interest after maturity, was given to said Lituristic Organs, Inc. and for value received was duly endorsed and delivered over to this plaintiff as collateral security for the obligation of Lituristic Organs, Inc., to said plaintiff, which obligation has never been paid.

Plaintiff is the due and lawful owner of said note signed by said defendant, P. Sixtus Meyer for said congregation, and had demanded payment thereof of the defendants, which has been refused. Therefore there is due from the defendants the sum of $6,265 with interest at the rate of seven per sent from November 15, 1931, to May 15, 1932, and interest from May 15, 1932 at the rate of eight per cent per annum.

A copy of said note is incorporated in the petition, of the date and for the principal sum, payable at the time and to the order of Lituristic Organs, Inc., and bearing interest at the rates hereinbefore alleged. Said note incorporates a warrant of attorney in the ordinary form and is signed

"St. Augustine's Congregation.
"By: P. Sixtus Meyer, CPPS, Pastor."

and bears an indorsement as follows:

"Lituristic Organs, Inc. by D. M. Lamson, Gen. Mgr., V. P."

The prayer of the petition is for judgment against each and all of the defendants for said sum of $6,265 with interest as aforesaid.

To this petition the defendants P. Sixtus Meyer, Henry Mehmert, Henry Schmitmeyer and Robert C. Schmeider filed their separate answers, but as no verdict or judgment was returned against any of them and none of them are parties to this proceeding in error, it is unnecessary to set forth the allegations of said answer, it being sufficient to state that such answer, except for admissions which are also contained in the answer of the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, and of John T. McNicholas, archbishop of Cincinnati, as trustee for said congregation, was in substance a general denial of the allegations of said petition.

The congregation of St. Augustine Roman Catholic Church of Minster, Ohio, and John T. McNicholas, archbishop of Cincinnati, as trustee for said congregation, filed their answer through John T. McNicholas, archbishop of Cincinnati, as trustee for St. Augustine Roman Catholic Church of Minster, Ohio, in which it is alleged in substance that the said John T. McNicholas is now and has been since August 12, 1925, archbishop of the Roman Catholic Archdiocese of Cincinnati, including within its territorial limits the county of Auglaize and the village of Minster; that, as such archbishop, he has spiritual and temporal jurisdiction over the members of the congregation of said St. Augustine Roman Catholic Church of Minster, Ohio; that said congregation is an unincorporated religious society, organized by the voluntary association of the members thereof for the worship of God according to the forms, ceremonies, rites, and discipline of the Roman Catholic Church, and for the performance of works of charity, education and religion, and all other duties, prescribed by the rules, regulations, canons and the discipline of said church; that the internal government of said congregation is in the hands of the pastor and a committee of three lay advisors, but subject always, however, to the approval and veto of the archbishop; that it has no board of trustees in the proper sense of that designation; that, as such archbishop, this defendant is the sole trustee for

said congregation; that, as such trustee, he has, under the wills of his predecessors in the said office of archbishop, and the laws of the state of Ohio, and, as prescribed by the rules, regulations, canons and discipline of the Roman Catholic Church, the full legal title to, and the sole power of control and disposition of all property, real and personal, and of moneys, funds and assets of any kind, belonging to said congregation; that all property and funds of said congregation are held by him in trust for said religious, educational and charitable purposes; and that the pastor of said congregation, at any and all times, is simply the designee and agent of said archbishop and trustee, and had only such limited authority and control over the affairs of the congregation, spiritual and temporal, as may be specifically conferred upon him by said archbishop and trustee.

For a first defense said defendant admits that P. Sixtus Meyer, a defendant herein, is the pastor of St. Augustine congregation; that this answering defendant is archbiship of the Roman Catholic Archdiocese of Cincinnati, and as such is trusteé for the said congregation and has custody, control and title to its property; that the defendants Henry Mehmert, Henry Schmitmeyer and Robert C. Schmeider are the committee of lay advisors of said congregation; and that the defendant, Lituristic Organs, Inc., is an insolvent corporation now in the hands of A. E. Frey, defendants, as receiver thereof, by appointment of the Common Pleas Court; and the answering defendant denies each and every allegation of said petition not hereinabove specifically admitted to be true.

For a second defense defendant reiterates and adopts all the allegations of his answer as contained in the inducement thereto and first defense, the same as if specifically set out at this place; and alleges, in addition, that the note sued upon and described in the petition, is invalid and a nullity, in that the purported signature thereto of the congregation by P. Sixtus Meyer, pastor, is a forgery.

For a third defense the answering defendant reiterates and adopts all the allegations of his answer as contained in the inducement thereto and the first and second defenses, and alleges in addition, that, even if the signature to said note were actually that of P. Sixtus Meyer, which he specifically denies, still the plaintiff has no valid claim under said note as against said congregation by reason of the fact that P. Sixtus Meyer had absolutely no right or power as pastor, nor had he any authorization of this defendant, said archbishop and trustee, to issue or deliver any such note or obligation on behalf of said congregation.

The prayer of the answer is that plaintiff's petition may be dismissed and that the answering defendant and said congregation may go hence without day and recover their costs.

The plaintiff by way of reply to the answer of said congregation and said archbishop, and to the answer of P. Sixtus Meyer, Henry Mehmert, Henry Schmitmeyer and Robert C. Schmeider denies each and every allegation in the above answers and each of them that are inconsistent with or not admissions of the averments of plaintiff's petition.

By way of reply the plaintiff further says that it adopts all the averments set forth in its petition and makes the same a part of this reply; and further alleges that on the 4th day of March, 1931, the defendant, P. Sixtus Meyer, made and executed a certain promissory note of that date for and in behalf of the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, in the amount of $5,250 due four months after date, with seven per cent interest per annum, and payable to The Lamson Company; that long before said note became due and payable, in due course of trade and for value received plaintiff purchased said note and became and still is the owner thereof; that after said note was due, the same was pretended to be paid and taken up and out of the hands of plaintiff by another note, dated September 4, 1931, due sixty days after date, payable to the order of The Lamson Com-

pany, in the sum of $5,503.75 made and signed by the defendant P. Sixtus Meyer for and in behalf of the congregation of St. Augustine Roman Catholic Church of Minster, Ohio, and that said note was duly endorsed by The Lamson Company to this plaintiff; that on or about November 15, 1931, this last above described note was pretended to be paid and taken up from the plaintiff by the delivery of the note described in plaintiff's petition in the manner and form therein set forth. Plaintiff says that it has recently been informed that the defendants claim that the above described note dated September 4, 1931, is also a forgery, but it alleges that the first above described note dated March 4, 1931, is the genuine note as above set forth, made, executed and delivered under the circumstances and by virtue of the facts set forth in plaintiff's petition concerning the execution of the note sued upon in this case.

Plaintiff prays in the event it should be found that the note described in plaintiff's petition and the note described in this reply dated September 4, 1931, are forgeries, that plaintiff recover judgment against the defendants in the sum of $5,250 with interest at the rate of seven per cent from March 4, 1931, and other relief.

To this reply the defendant, John T. McNicholas, archbishop of Cincinnati, as trustee for said congregation and on behalf of said congregation and of himself as such archbishop and trustee, demurred for the following reasons:

(a) On its face it is not sufficient in law;

(b) The matter contained therein is not sufficient to avoid, but is actually confirmatory of, the defenses set up in the answers; and,

(c) The allegations thereof constitute a departure from the cause of action set up in the petition.

P. Sixtus Meyer and the other defendants also filed a separate demurrer on the same ground.

These demurrers were overruled by the court, to which ruling the defendants' severally excepted.

After the overruling of the demurrers the cause was submitted to the court and jury.

The evidence in this case is in substance as follows:

The note described in the petition is a forgery as is also the note under date of September 4, 1931, described in the reply, the forgeries having been committed by one D. M. Lamson who previous to the trial had been convicted of the forgeries. Lamson, however, testified that the note dated March 4, 1931, in the sum of $5,250 signed "St. Augustine Congregation, P. Sixtus Meyer, CPPS, Pastor," payable to the order of The Lamson Company, described in the reply, is not a forgery and that the signatures above set forth were placed thereon in his presence by P. Sixtus Meyer who at the same time and as a part of the same transaction entered into an agreement in writing with The Lamson Company for the installation by The Lamson Company of a pipe organ in said St. Augustine Church, the purchase price of which was evidenced by said note. P. Sixtus Meyer denied the testimony of D. M. Lamson in this respect and testified that said note of March 4, 1931, was not executed by him and does not bear his signature. Elwin Leslie, a handwriting expert, also testified that the note of March 4, 1931, as well as the other notes, were all forgeries. J. C. Thompson, cashier of the plaintiff bank at the time the note of March 4, 1931, came into the possession of the bank, testified that the note was purchased by the bank in the ordinary course of business and for value, on March 4, 1931, prior to its maturity. P. Sixtus Meyer testified that he had authority to make contracts on behalf of the congregation of St. Augustine's Roman Catholic Church of Minster, Ohio, not exceeding the sum of two hundred dollars, and that all contracts in excess of this amount were subject to the approval and veto of John T. McNicholas, archbishop of Cincinnati.

The written agreement which Lamson testified was executed contemporaneously with the note of March 4, 1931, was not offered in evidence, it appearing from the evidence that the same

had been lost or destroyed, but there was offered in evidence a written agreement purporting to be under date of April 1, 1931, and entered into between Lituristic Organs, Incorporated, of Lima, Ohio, and St. Augustine's Church of Minster, and signed Lituristic Organs, Incorporated, by D. M. Lamson, and St. Augustine's Church By: P. Sixtus Meyer, C.P.P.S. Pastor, providing for the installation of a pipe organ by Lituristic Organs, Incorporated, in said church for the period of one year on trial, test and approval, and further providing that if on such trial and test by said church, said organ is found to be satisfactory for the requirements of the church it shall pay said corporation therefor the sum of $5,250 in cash, entered into after the said D. M. Lamson had been advised by letter under date of March 30, 1931, from Rev. Ignatius A. Wagner, C.P.P.S that under the law of the Cincinnati Archdiocese, a priest has no authority to make any purchases or contracts to purchase above a certain amount of money and that even if the organ should be installed according to the specifications of the best builders in the trade, the entire contract might be rejected.

There is further evidence that the organ was installed in the church but there is no evidence that it was approved by the church or by any one on its behalf.

The three notes and letter in question were offered in evidence and there was also offered in evidence certain signatures of P. Sixtus Meyer admitted to be genuine, as well as various photostatic copies of the signatures on the notes and other signatures of P. Sixtus Meyer, and a letter under date of April 26, 1932, addressed to The Metropolitan Bank and signed by P. Sixtus Meyer, C.P.P.S., in which he states: "I know of no note I ever gave to the Lituristic Organs, Inc. The agreement to build an organ for St. Augustine's Church is rescinded. The papers were returned."

At the close of all the evidence and after the jury had retired in charge of the bailiff, the following colloquy occurred between the court and counsel:

"By the Court: I have a question or two I want to propound to counsel so you can get my views of the matter. Whether this is the signature of Father Meyer's, that is a question for the jury. Now, as to the question of agency, I would like to know whether this is a question of law, or a question of fact for the jury, in other words, there is no dispute as to the facts in the case. I realize when different conclusions can be drawn from a set of facts it always becomes a question for the jury.

"Go back to our school days, we have general agency and special agency; you could hardly argue to this court that the pastor of the congregation was a special agent. General was he not? He clearly had a right to give a note for two hundred dollars. Now, the agency also shows as far as the church itself is concerned, the relationship of the church and pastor that his authority was limited to two hundred dollars.

"There is no evidence here that that information was ever conveyed to the plaintiff.

"By Mr. Boesel: Father Meyer testified to that effect.

"By the Court: After the note was signed, I am talking about any authority conveyed to the bank of March 4th, —in other words, your note was sold and purchased before the matter came up. So I do not think you can argue that the bank had any knowledge that the priest's authority was limited to two hundred dollars at the time of the purchase of that note.

"I want to know then, the facts not being disputed, they can not be disputed, why isn't the authority of the agent a matter for the judge.

"By Mr. Dempsey: That is the question of forgery, whether the bank had knowledge of the limitation before it purchased the note?

"By the Court: I am inclined to think at this time he was general agent, if that is true, and no other inference can be drawn other than as you stated, then it becomes a question of law and not a question of fact to be submitted to the jury. The only question I see to go to this jury is the question of forgery. The

controversy as to authority came up, I would not say how many months but long after purchase by the bank. Remember we are dealing with negotiable paper purchased by the bank in due course of business. So I am inclined to submit but one question. I take this view, in trying law suits, it is the duty of counsel for plaintiff to see the court commits no error.

"By Judge Hughes: It would not gain me anything to insist upon an issue being submitted that is not in the case, if it simply means reversal of the judgment if I get it.

"By the Court: I could give a blanket charge by saying what special agent is and what general agent is as we generally do, but I am not inclined to do that.

"By Judge Hughes: Our Supreme Court has held when an issue is submitted, not in the case, it is prejudicial error.

"By the Court: Absolutely. I can not see how you gentlemen can argue that he was a priest of this church, or any church, general representative of the church makes him general agent, therefore, he would have to bring the knowledge part, prior to the purchase or at the time of the purchase his apparent lack of authority, and that does not appear. He clearly has no authority to expend more than two hundred dollars, as far as the church itself is concerned, that is quite apparent to me.

"By Judge Hughes: I think that is apparent.

"Counsel for plaintiff and defendants agreed that the only question to be submitted to the jury is whether the signature is a forgery or the genuine signature of Father Meyer."

Following the colloquy, the court charged the jury, the charge omitting the formal parts, being as follows:

"The only question for you to determine in this law suit is, is the signature attached to this note appearing on this note, the signature of P. Sixtus Meyer; that is the only question that

you have to determine ladies and gentlemen of the jury."

"In this case I am submitting two verdicts for your consideration. One verdict is against this congregation for $5,265, that is the amount of the note with interest to date, because there is no dispute as to the amount. * * * If your verdict is for the plaintiff it is for the full face of the note. Unless your verdict is for the plaintiff it must be for the defendant, the other verdict is a verdict for the defendant. * * *

"Now, if the plaintiff in this action, and by the plaintiff I mean the bank, has shown to you by a preponderance of the evidence that the signature to this note, exhibit A, is the genuine signature of the pastor of this church, then your verdict should be for the plaintiff, but, unless the plaintiff has shown to you by a preponderance of the evidence that the signature is the genuine signature of the pastor of this church your verdict should be for the defendant."

The defendants excepted to the charge of the court.

The jury then returned a verdict in the following form:

"We, the jury, being duly impaneled and sworn and affirmed, find the issues in this case in favor of the plaintiff, and assess the amount due to the plaintiff from the defendant the said St. Augustine congregation, at the sum of ($5,265) Five thousand two hundred sixty-five—00/100 Dollars."

the verdict being dated June 12, 1935, and signed by all the members of the jury.

The defendant, the congregation of St. Augustine's Roman Catholic Church of Minster, Ohio, filed its motion for new trial within rule and thereafter on August 30, 1935, more than two months after the verdict had been recorded and the jury thereby discharged, the plaintiff filed its motion to reduce the verdict found by the jury at the trial of

this case, to form by amending to read as follows:

"We, the jury, being duly impaneled and sworn and affirmed, find the issues in this case in favor of the plaintiff, and assess the amount due to the plaintiff from the defendant, the St. Augustine Roman Catholic Church of Minster, Ohio, and John T. McNicholas, archbishop of Cincinnati, as trustee for said congregation, at the sum of five thousand two hundred sixty five and no/100 dollars ($5,265.)"

On December 17, 1935, both motions were submitted to the court and the court granted the motion to amend, the following recital appearing in the journal entry thereof:

"Upon the statements and arguments of counsel and after due consideration, the court finds that said motion is well taken."

The plaintiff in error excepted to this ruling, but no bill of exceptions was taken on the hearing of said motion. The court overruled the motion for a new trial to which ruling the plaintiffs in error excepted.

Judgment was then entered against the defendants the congregation of St. Augustine's Roman Catholic Church of Minster, Ohio, and John T. McNicholas, archbishop of Cincinnati, as trustee for said congregation, upon said verdict.

This proceeding in error is brought to reverse said judgment, by the said congregation and said archbishop.

In their brief filed herein, plaintiffs in error specify five assignments of error from their petition in error, which under the provisions of the statute will be the only ones considered. The errors specified are:

1. That the court below erred in overruling the demurrer of the plaintiff's in error to the reply of the defendant in error.

2. That the verdict is not sustained by the weight of the evidence.

3. That the verdict is contrary to law.

4. That said judgment was rendered for defendant in error when it should have been rendered for plaintiffs in error.

5. The court erred in sustaining the motion of the defendant in error to amend the verdict of the jury in the court below to include John T. McNicholas, archbishop of Cincinnati, as trustee for said congregation in said verdict when the original verdict rendered by the jury and did not include John T. McNicholas, archbishop of Cincinnati, as trustee for St. Augustine's Roman Catholic Church of Minster, Ohio, to which ruling of the court plaintiffs in error then and there excepted.

These specifications of error will be considered in the order mentioned.

1. The first ground of the demurrer to the reply is not well taken as the reply states a cause of action. And neither the second nor third grounds stated are grounds for demurrer under the laws of Ohio. But treating the demurrer as a motion to strike, the ruling of the court thereon was not prejudicial to the defendant as the facts pleaded in the reply could have been pleaded by the plaintiff in its petition, and the cause was tried and submitted to the jury in the same manner it would have been submitted if the facts pleaded in the reply had been pleaded in the petition, and any error there may have been in the ruling of the court, thereby cured.

2. It is contended by the plaintiffs in error that the verdict of the jury on the issue of forgery, is against the weight of the evidence.

Insofar as the archbishop is concerned, this assignment of error is without foundation as no motion for a new trial was filed on his behalf, and such assignment lies only where motion for new trial is filed and overruled. **Sams v Bindley,** Court of Appeals, Marion county, Ohio, No. 841, decided February 14, 1936. And insofar as the congregation is concerned it is unnecessary to pass on this assignment as the case is finally disposed of on other assignments of error.

85

3. As the last three assignments of error involve similar questions, they will be considered together, and in considering these assignments the first question that will be considered is the effect of the colloquy between the court and counsel, above referred to, together with the agreement set forth in such colloquy, that the only question to be submitted to the jury is whether the signature is a forgery or the genuine signature of Father Meyer.

It is contended by the defendant in error that the agreement referred to was in effect a consent by the defendants that the jury should return a verdict against them in case it found that the note of March 4, 1931, was not a forgery. It will be noted, however, from the colloquy, that the court stated that all the facts in the case other than the fact as to whether such note was a forgery, were undisputed and that such facts presented a question of law for the court, while the matter of forgery presented a question of fact for the jury.

Under the provisions of §11420-12, GC, the verdict of the jury must be either general or special.

Sec. 11420-13, GC, provides:

"A general verdict is one by which the jury finds, generally, upon any and all the questions submitted, in favor either of the plaintiff or defendant."

Sec. 11420-14, GC, provides:

"A special verdict is one by which the jury finds facts only as established by the evidence; and it must so present such facts, but not the evidence to prove them, that nothing remains for the court but to draw from the facts found, conclusions of law."

The agreement of counsel, above referred to, is both in form and substance ▓▓▓▓ an agreement that the jury should return a special verdict as to the fact of forgery. It does not purport to limit the issues in the case to one issue but simply provides that only one issue

shall be submitted to the jury. It does not make any provision as to the manner of the disposition of the other issues in the case or as to the waiver of the rights of any of the parties to have such issues adjudicated. And in the absence of such provisions and in view of the fact that the court in the colloquy leading up to the agreement had expressed his intention of passing on other issues in the case as matters of law, the legal effect of the agreement was the same as if each party had moved for a directed verdict upon all issues in the case other than the issue of forgery, reserving the right to have the jury return a special verdict on that issue; and it was the duty of the court, under the agreement, to determine all issues other than ▓▓▓ the issue of forgery, and upon the finding of the jury on the issue of forgery and the findings of the court on the other issues, to enter such judgment as is warranted by law.

The agreement did not authorize the returning of a general verdict by the jury in favor of the plaintiff.

The charge of the court therefore did not conform to the agreement of counsel, as he instructed the jury in the event it found that the note of March 4, 1931, was genuine, to return a general verdict in favor of plaintiff.

While the verdict of the jury as rendered covered issues which under the agreement of counsel were not to be submitted to the jury, it also determined the issue which was to be submitted to the jury under the agreement, and the court as above mentioned, was authorized under the agreement to enter such judgment in the case as was warranted by the other facts plus the finding of the jury that the note in controversy was forged.

If the other facts and the finding warranted the judgment as rendered against both the plaintiffs in error, they were not prejudiced by the manner of submission to the jury or the amendment of the verdict. On the other hand, if such judgment was not warranted by the other facts and finding,

the defendants were prejudiced and this is true irrespective of the proceedings had in connection with the amendment of the verdict.

Giving full effect to the presumption, which exists where the record as in this case does not disclose the statements of counsel upon which the amendment was made, that the proceedings for the correction and amendment of the verdict were in all respects regular and proper, the verdict as amended stands on the same basis as any other verdict, and when challenged must be set aside if it is not sustained by the evidence or is not consistent with the pleadings.

There is no allegation in the petition or reply and there is no evidence that P. Sixtus Meyer acted as the agent of the archbishop in executing the note or in the transaction surrounding the execution of the same. It is alleged in the answer that P. Sixtus Meyer was the agent of the archbishop for certain limited purposes, not including the transaction mentioned or the execution of the note. But insofar as the liability of the archbishop on the note is concerned, it is immaterial whether P. Sixtus Meyer acted as his agent in the execution of the note.

In Daniel on Negotiable Instruments, Fifth Edition, Volume 1, page 311, Section 303, it is stated:

"That no party can be charged as principal upon a negotiable instrument unless his name is thereon disclosed. The reason of this rule is that each party who takes a negotiable instrument makes his contracts with the parties who appear on its face to be bound for its payment; it is 'a courier without luggage,' whose countenance is its passport; and in suits upon negotiable instruments, no evidence is admissible to charge any person as a principal party thereto, unless his name in some way is disclosed upon the instrument itself; although upon other written contracts, not negotiable, it is often competent to show that, although signed in the name of the agent only, they were executed in the business of the principal, and

with the intent that he should be bound."

See also 8 Corpus Juris, pages 157, 158.

The above rule is adopted as part of the Ohio Negotiable Instrument Code, Section 8123 providing:

"No person is liable on the instrument whose signature does not appear thereon except as herein otherwise expressly provided. But one who signs under a trade or assumed name will be liable to the same extent as if he had signed in his own name."

The liability of the archbishop in this case does not come within the exception mentioned and consequently comes within the general rule as to liability provided in the foregoing section.

The archbishop, therefore, under the pleadings and evidence in the case, is not liable on the note █ and as the action against him is based on the note the judgment against him is erroneous and should be reversed and final judgment entered in his favor. And the same result would be reached as to him if this action was based on the contract to purchase, as there is no evidence that he authorized or ratified such contract or that the terms of said contract upon which payment for said organ were conditioned have happened, been complied with or performed.

As this action is based on the note the judgment herein will not be a bar to an action against him for the debt evidenced by the note, as distinguished from the note itself, or in quantum meruit.

Whether the judgment against the plaintiff in error congregation is erroneous is dependent on other facts in the case. It is not alleged in the petition that the congregation is an incorporated society or association, and it is alleged in the answer of the congregation that it is an unincorporated religious society organized by the voluntary association of members thereof, for the urposes set forth in the answer. In the reply the plaintiff denies each and

every allegation in the answer of the congregation that are inconsistent with or not admissions of averments of plaintiff's petition. The allegations of the answer of the congregation as to its status as an unincorporated religious society is not inconsistent with the averments of the petition, and not being denied is therefore admitted.

"An unincorporated association can not sue or be sued in its own name. Even the members of an unincorporated association can not be sued as members of the association but must be sued as individuals, collectively and conjointly." **3 O. Jur. 758.**

"An unincorporated religious society can not sue or be sued in its own name any more than any other incorporated association can sue or be sued in its own name. The members of the society are the proper parties to bring and defend such actions." **35 O. Jur. 364.**

"A voluntary association of persons which is not a legal entity, has no legal existence, and can not sue or be sued, has no capacity to appoint an agent." 3 American Jurisprudence, page 20.

Under the authorities mentioned, the plaintiff in error congregation being a voluntary unincorporated society or association, could not sue or be sued in its own name, and had no capacity to appoint an agent to act on its behalf in the transactions described in the pleadings, and the actions of such purported agent were not binding upon it and consequently the judgment was erroneously rendered against it, and it is entitled to have the judgment reversed and final judgment entered in its favor.

The judgment of the lower court will therefore be reversed and final judgment entered in favor of plaintiff in error at costs of defendant in error.

KLINGER, PJ., concurs.

CROW, J., dissenting.

The majority of the court have directly raised, and solely based the judgment of reversal on a point not specifically mentioned by plaintiffs in error, namely the construction of the remarks of the trial judge and the counsel for the parties, severally, which words are fully quoted in the majority opinion and therein styled colloquy.

That majority action might well be pardoned if the point so raised were correctly decided, which in my opinion, is not done.

At the oral argument of this error proceeding counsel for plaintiff in error did not even suggest that the quoted language of the trial judge by which the case was submitted to the jury, was such as to not show the submission of the whole case properly on the issue of the genuineness of the signature of Meyer the priest, the sole contention on this issue being that the bill of exceptions did not speak the truth as to the language appearing therein; and in the reply brief of plaintiff in error it is stated that no such agreement was ever made but the recital that the parties agreed was the unwarranted conclusion of the stenographer, and the reply brief suggested that this court call upon the stenographer to testify on what authority this alleged clause was inserted in the stenographic notes. The first brief of plaintiff in error made no mention of the colloquy.

Counsel for plaintiff in error in no manner whatsoever, suggested diminution of the record to the end that the bill of exceptions be returned to the trial judge for correction, and the reason becomes apparent why that was not done, from an inspection of the bill of exceptions and the objections which were filed to it by the plaintiff in the trial court, the bill as filed by the defendants not containing when filed, the agreement to submit the case to the jury to be determined by it on the issue of the genuineness of the signature of Meyer.

The construction of the quoted colloquy depends not alone on its context as an entirety, but the conduct of the

court and the several counsel must necessarily be taken into account, that is what was said and not said and what was done and not done by the trial judge and the counsel severally.

If from all these factors, a doubt arises, such doubt must be resolved against plaintiffs in error who brought the bill of exceptions on the record. 2 O. Jur. 427. This is no more than an application of the unexceptional rule that all reasonable presumptions are to be resolved in favor of the validity of a judgment.

The two points in mind of the trial judge and the several counsel, pertained to the issue of genuineness of the signature of Meyer to the note, and the claimed limitation of his authority to bind the congregation only to the amount of two hundred dollars. The first point was one of fact, and the second was one of law namely whether such limitation touched the bank before or when it acquired the note. As the trial judge said, Meyer clearly had the right to give a note for a sum up to two hundred dollars, but there was no evidence of information by the bank of that limitation of amount, and added that the facts not being in dispute, the law on this point was for the trial judge and not for the jury. Also said the trial judge, it would be necessary to bring knowledge of the limitation of authority to the bank prior to or at the time it acquired the note. Moreover, the trial judge said he could not see how it could be argued that it would not be necessary that the bank have knowledge of the limitation on the authority of the priest to bind the congregation to the amount of two hundred dollars. And he also said that the authority of the priest to expend more than two hundred dollars so far as the church itself was concerned, was apparent to him.

Counsel for plaintiff acquiesced and counsel for defendant did not say a word by way of contention or protest, but unqualifiedly agreed to the submission of the case to the jury on the determination of the sole issue of genuineness of the signature of Meyer.

If the trial judge thought as a matter of law that plaintiff could not recover beyond the amount of two hundred dollars, I can not believe he would have submitted the case to the jury at all.

None of defendants' counsel took any steps at any stage of the trial or after judgment, to bring to the attention of the trial judge, a claim that there had not been submitted to the jury the issue of want of authority of Meyer if submission of that issue had not been understood by them to have been waived by agreement. The general exception to the charge certainly did not do so in words, whatever was its technical legal effect.

No motion was made for a directed verdict or for judgment notwithstanding the verdict, and the one motion for a new trial did not mention the manner of submission of the case to the jury.

It is also noteworthy that the form of the verdict as finished and read by the trial judge and returned by the jury, found "the issues in the case in favor of the plaintiff" and assessed "the amount due to the plaintiff from the defendant" at the sum of $5,265.

Upon the whole it is to me unthinkable that any of the counsel for any of the parties, was unconscious when the verdict was returned that in effect it fully determined every issue in favor of the plaintiff.

Finally, if as the majority opinion declares, the congregation did not exist in law and therefore was not suable, it did not become so by virtue of the suit nor in any other manner, and consequently could not have commenced this proceeding in error. Wherefore the judgment of the court below as to it was wholly void, and the attempted judgment of reversal in this case is likewise void though the nullity there as here may be harmless in all directions.